Argued 12 February; decided 15 April, 1901.

## DUNHAM *v.* SIGLIN.

[64 Pac. 661.]

39  291
f39  593

DECEDENT'S ESTATE—EQUITY*—TRUST—COUNTY COURT.*

1. A claim against the estate of a deceased person for an assignment of a chose in action which it is alleged the deceased held in trust for the claimant, is not a claim against the estate as a money demand is a claim, and the enforcement of the right set up must be sought in a court of equity, as probate courts in Oregon do not have jurisdiction over the enforcement of trusts: *Winkle* v. *Winkle*, 3 Or. 193, distinguished; *Weider* v. *Osborn*, 20 Or. 307, approved; *Weill* v. *Clark's Estate*, 9 Or. 387, and *Jasper* v. *Jasper*, 17 Or. 590, followed.

SUFFICIENCY OF EVIDENCE.

2. An examination of the evidence shows that the Ames-Thibault judgment assigned by Victor Lackstrom to J. M. Siglin was in trust to pay the assignee $50, and then assign the remainder to H. W. Dunham.

ESTATES OF DECEDENTS—RECOVERY OF TRUST FUND.

3. Where a deceased or insolvent trustee has collected a trust fund, which is on hand, undistributed, and in a separate depository, unmixed with personal funds, at the time of the trustee's death or insolvency, equity will require payment of such fund to the *cestui que trust: Shute* v. *Hinman*, 34 Or. 578, applied.

From Coos : HENRY L. BENSON, Judge.

This is a suit by H. W. Dunham against Nellie Siglin, individually and as administratrix of the estate of J. M. Siglin, deceased, to establish and enforce a trust against the representative of the dead trustee. It is substantially averred in the complaint that on May 21, 1894, one Victor Lackstrom, being indebted to the plaintiff in the sum of $300, and to J. M. Siglin in the sum of $50, assigned to the latter a judgment he had secured against Kate F. Ames and Frank Thibault for the sum of $213.75, with interest from November 17, 1893, and $42.24 costs ; that Siglin agreed with plaintiff and Lackstrom to collect the

---

*NOTE.— As to the equity jurisdiction of county courts in Oregon, see, also, *Richardson's Guardianship*, 39 Or. 246.— REPORTER.

judgment, discharge his claim, and pay the remainder of
the money to the plaintiff, or that when he received the
sum so due him he would, upon demand, assign the judg-
ment to the latter; that Siglin collected thereon and
retained the sum of $50, and, having died intestate, the
defendant Nellie Siglin was appointed by the county
court of Coos County administratrix of his estate, and,
having duly qualified for the trust, refused, upon a de-
mand therefor, to assign said judgment to the plaintiff;
that the money due on the judgment has been deposited
with the county clerk of said county, and is subject to
the order of the defendant, who will, unless restrained,
pay the same to the creditors of said estate; and that
plaintiff, being the equitable owner of the judgment, is
entitled to the money paid on account thereof. A de-
murrer to the complaint on the ground that it did not
state facts sufficient to constitute a cause of suit, and that
the court did not have jurisdiction of the subject-matter,
having been overruled, an answer was filed, denying
the material allegations of the complaint, and averring
that, when the judgment was assigned, Lackstrom was
indebted to Siglin in the sum of $250. This allegation
having been denied in the reply, the cause was referred
to W. U. Douglas; and from the testimony taken by him
the court found, in effect, that the judgment was assigned
in payment of attorney's fees for services performed for
Lackstrom by Siglin, who, with his consent, agreed that
if any surplus remained after the payment of said fees
the sum so remaining should be paid to the plaintiff;
that the judgment has been paid, and the money received
thereon is a part of the assets of the estate of J. M. Siglin,
deceased, but that upon the payment of the attorney's
fees no surplus remained,—and thereupon dismissed the
suit, from which decree the plaintiff appeals.

                                        Reversed.

For appellant there was a brief over the name of *Hall & Hall*, with an oral argument by *Mr. John F. Hall.*

For respondents there was an oral argument by *Mr. T. S. Minot*, with a brief to this effect:

I.   In this country courts of equity do not generally interfere in the administration of estates, except in the aid of probate courts, when the powers of these are inadequate to the purpose of perfect justice, and then for the same reasons which induce them to interfere with the jurisdiction of common law courts: Woerner, Am. Law of Adm. p. 356, note 6; Story, Eq. Juris. (12 ed.) § 531, note 1; *Adams* v. *Adams*, 22 Vt. 50–58; *Bryan* v. *Hickson*, 40 Ga. 405–408; *Irwin* v. *Bond*, 41 Ga. 630–650; *Jeter* v. *Banard*, 42 Ga. 43–44.

II.   A court of equity will not, therefore, assume jurisdiction of a claim against an estate until it has been shown that the probate court can not afford the requisite relief: Woorner, Am. Law of Adm. p. 616, note 1; *Adams* v. *Adams*, 22 Vt. 50–57; *Harris* v. *Douglass*, 64 Ill. 466–469; *Blanchard* v. *Williamson*, 70 Ill. 647–651; *Walker* v. *Dahl*, 79 Ill. 473.

III.   The statute has conferred on county courts exclusive jurisdiction in all matters pertaining to the transfer of title to personal property of deceased persons. Here this is a question of the title to the money that was paid on the judgment held by Siglin, and this is a case of an ordinary claim for money: *Winkle* v. *Winkle*, 8 Or. 193; Pomeroy, Eq. Juris. § 1145.

IV.   Coming now to the facts in this suit, which I have carefully followed through all its stages, I can not conceive upon what legal or equitable principle Dunham took this appeal to the Supreme Court of the State of Oregon, unless it was on some of the principles involved

in the old and highly venerated case of *Balaam* v. *His Ass*, which case, in some respects, is analogous to this viewed from our standpoint.

Commenting on the evidence as a matter of professional reciprocity, I would say that I have as high a respect for Hark Dunham's reputation for veracity as one could reasonably possess,—in fact, in my opinion, it is as good as that maintained by Mrs. Julius Cæsar,— but then, good people "go wrong" and are frequently mistaken. As all mankind are weak and liable to err, when self is involved, it seems to me that Burns had a proper conception of a situation similar to this when he wrote the following :

> "I'll no say men are villains a'
>   The real hardened wick'd,
> Wha hae nae check but human law
>   Are to a few restricked,
> But, och! Mankind are unco weak,
>   And little to be trusted;
> If self the wavering balance shakes
>   It's rarely right adjusted."

We are pleased and highly honored to know that counsel for plaintiff-appellant has "examined our citations and concluded that neither of them apply to the case at bar." On our part we are equally positive that none of his authorities would be suspected of bearing on the controverted questions involved in this suit, in the slightest degree.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is maintained by the defendants' counsel that the plaintiff's demand is an ordinary claim against a decedent's estate for the recovery of money, to award which the county court possesses plenary power, and, this being so, a court of equity has no jurisdiction of the

subject-matter, but if it should be held that the latter
court was the proper forum for the enforcement of the
plaintiff's alleged private right, his failure to aver that
the county court can not afford the requisite relief ren-
ders his complaint vulnerable to the objection that it did
not state facts sufficient to constitute a cause of suit, and
hence no error was committed in dismissing it. The
transcript shows that the plaintiff served upon the ad-
ministratrix a written demand for the assignment to him
of said judgment, and notified her that unless she com-
plied with his request he should attempt to hold her per-
sonally liable for the sum due him ; that she indorsed
upon the demand her rejection thereof, and signed the
same in her representative capacity. But it does not
appear that plaintiff ever filed it in the county court or
asked its allowance thereby. We do not understand that
the demand adverted to is in the nature of an ordinary
claim against the decedent's estate, to be paid pro rata
with the claims of creditors in due course of administra-
tion, but, rather, a preliminary step to a suit by a *cestui
que trust* to impress upon the estate of a decedent a lien
for a trust fund still intact, whereby he seeks to recover
the entire fund.

The defendants' counsel, in support of the principle for
which they contend, place much reliance upon the decis-
ion rendered in the case of *Winkle* v. *Winkle*, 8 Or. 193,
in which it was held that, the statute having conferred
on the county court exclusive jurisdiction in all matters
pertaining to the transfer of the title to personal property
belonging to a decedent's estate, a court of equity was
without jurisdiction in respect to such property. The
principal question involved in that case was the right of
an administrator, without an order therefor from the
county court, to transfer the title to personal property
belonging to the decedent's estate ; and the rule there

announced being applicable only to tangible property
(*Weider* v. *Osborn*, 20 Or. 307, 25 Pac. 715), and the said
judgment being intangible and in the nature of a chose
in action, except that it was capable of immediate enforce-
ment without suit or action, the case relied upon is not
in point.    In *Weill* v. *Clark's Estate*, 9 Or. 387, it was
held that a county court was without jurisdiction to en-
force a trust ;  such power having been lodged exclusively
in a court of equity.    So, too, in *Jasper* v. *Jasper*, 17 Or.
590 (22 Pac. 152), a testator, by his will having provided
for the payment of his debts and made certain bequests,
gave the residue of his property to executors, who were
directed to pay from the income of the residuary property
such sums of money as might be necessary for the support
of his widow and minor children.    The executors, having
paid the debts and distributed the bequests, were ordered
by the county court to pay the widow a certain sum for
her support ;  but it was held that, the executors having
discharged the duty imposed upon them under the terms
of the will, a trust attached in their hands to the residu-
ary property, thereby depriving the county court of juris-
diction in the matter, and that a court of equity only was
adequate to grant the relief demanded.

In *Harris* v. *Douglas*, 64 Ill. 466, it was held that a
court of equity will not ordinarily assume jurisdiction of
claims against a decedent's estate until after their allow-
ance by the county court, but, if any special reason can
be assigned why that court can not afford the requisite
relief, equity will intervene.    When, however, a testator
by his will makes the payment of his debts a charge
upon a portion of his estate, a court of equity will have
jurisdiction without first establishing the indebtedness
in a court of law, as it is an original ground of equity juris-
diction to declare and enforce trusts.    Judge Woerner,
in his exhaustive work on American Law of Administra-

tion (2 ed.), vol. 1, p. *344, in speaking of the power
conferred upon probate courts, says : " The right or title
of the decedent to property claimed by the executor or
administrator against third persons, or by third persons
against him, as well as claims of third persons against
creditors, heirs, legatees, devisees, or distributees, must,
if an adjudication become necessary, be tried in courts
of general jurisdiction, unless such jurisdiction be ex-
clusively conferred on probate courts." The legislative
assembly of this state has not conferred upon the county
court power to determine a controversy in the instances
specified by the learned author, and, it having been
alleged in the complaint that the judgment in question
was assigned to Siglin in trust for the plaintiff, the com-
plaint stated facts sufficient to constitute a cause of suit,
and to show that the county court was powerless to grant
the relief demanded ; and, the notice served upon the
administratrix not being an ordinary claim for the pay-
ment of money from the assets of the decedent's estate,
it was not necessary to aver any want of jurisdiction of
that court, and hence a court of equity has jurisdiction
of the subject-matter.

2.   The controversy on the merits relates to the amount
due Siglin from Lackstrom when he assigned the judg-
ment to him,—the plaintiff claiming that it was $50 ;
and the defendant, $250.   The evidence shows that prior
to such assignment the plaintiff, as surety, had become
liable to pay the sum of $300 in consequence of Lack-
strom's default, and that the latter had sustained financial
reverses ;  and it appears the only property he possessed
was the judgment in question, which Siglin, as his attor-
ney, had secured, and for which service Lackstrom owed
him the sum of $50.   J. F. Hall, as plaintiff's witness,
testified that in August, 1894, Siglin notified him, as at-

torney for Mrs. Ames and Mr. Thibault, that he intended
to have an execution issued on said judgment, saying that
he had an interest therein for some fee, which must be
paid at once, and in answer to the inquiry as to how much
must be paid him, he replied, "$50" telling the witness
that plaintiff also had an interest in the judgment, and
that, after he had been paid the sum demanded, any
arrangements he could make with the plaintiff in respect
to postponing the payment of the judgment would be
satisfactory ; that the witness saw the plaintiff, and hav-
ing secured from him an extension of time for such pay-
ment, the judgment debtors gave him $50, which he paid
to Siglin.   Thereafter he received a letter of which the
following is a copy :—

        "Marshfield, Oregon, March 6, 1895.
"*J. F. Hall, Esq.*
  "Dear Sir : H. W. Dunham has an interest in the
Thibault-Ames judgment, and, as he is compelled to pay
a security debt for Lackstrom at once, he wants one hand
to wash the other, and directs me to proceed and collect,
which I shall do unless the judgment is satisfied within
ten days.
        "Very respectfully,
                              "J. M. Siglin."

. He again called upon Siglin, who told him that, acting
under the plaintiff's direction, he had caused an execution
to be issued, but that any arrangement he might make
with plaintiff in relation to the payment of the judgment
would be satisfactory to him ; that he thereupon saw the
plaintiff, who agreed upon another extension, whereupon
Siglin recalled the execution.   Hall's testimony in rela-
tion to these extensions is corroborated by that of the
plaintiff.
  T. S. Minot, an attorney for the defendants, appear-
ing as their witness, testified that when the assignment

was made he was a student in Siglin's office; that Siglin was retained by Lackstrom in an action brought by him against one Hansen, and performed service for him which was reasonably worth $125, and in another case, of *Lackstrom* v. *O'Connell*, he performed services of the reasonable value of $50, and other services which he rendered for Lackstrom, amounting in all to the sum of $250, to pay which Lackstrom assigned the judgment to him. No books belonging to Siglin were offered in evidence to corroborate the testimony of the last witness, and we think Lackstrom owed Siglin only $50 at the time the judgment was assigned; for at that time the judgment, interest, and costs so assigned, amounted only to $264.87, and, if Siglin was to receive $250 thereof, $14.87 only would remain for the plaintiff; and we can not think that this small sum was such an interest in the judgment as would seriously embarrass the judgment debtors, or cause them to seek such extensions.

3.   The money paid in discharging the judgment being deposited with the county clerk of Coos County subject to the order of the administratrix, who unlawfully claims the same, the specific fund is capable of identification; and, this being so, a court of equity will follow and award it to the *cestui que trust*: *Ferchen* v. *Arndt*, 26 Or. 121 (46 Am. St. Rep. 603, 37 Pac. 161, 29 L. R. A. 664); *Muhlenberg* v. *Northwest Trust Co.* 26 Or. 132 (38 Pac. 932, 29 L. R. A. 667); *Rockwell* v. *Portland Sav. Bank*, 31 Or. 431 (50 Pac. 566); *In re Assignment of Bank of Oregon*, 32 Or. 84 (51 Pac. 87); *Shute* v. *Hinman*, 34 Or. 578 (56 Pac. 412, 58 Pac. 882, 47 L. R. A. 265). It follows that the decree of the court below must be reversed, and a decree will be entered here awarding plaintiff the relief demanded; the costs in both courts to be paid by the estate.                                    REVERSED.