Argued October 24, decided November 26, 1912, rehearing denied January 21, 1913.

## HILLMAN v. YOUNG.

(127 Pac. 793.)
(129 Pac. 124.)

**Pleading—Objections—Waiver.**

1. Under Section 72, L. O. L., providing that a defendant taking no ·objection by demurrer or answer waives the same, except objections to the jurisdiction, and that the complaint does not state a cause of action, a defendant answering over after the overruling of a demurrer waives informal statements in the complaint, but the defense interposed, unless it contains an express admission, cannot supply the omission of a material averment of the complaint, which defect is never relinquished if insisted on.

**Equity—Probate Courts—Conflicting Jurisdiction.**

2. The rule that, where jurisdiction of the probate court has once properly attached, no other will interfere with its judgment, except on appeal therefrom or proper review thereof, is subject to the exceptions recognized by Sections 1279-1281, L. O. L., authorizing an executor or administrator to sue to set aside fraudulent transfers where the estates are insufficient to pay the claims, but the right to sue to set aside transfers can only be exercised when such transfers are in fraud of creditors.

**Descent and Distribution—Wills—Actions by Heirs or Legatees.**

3. Where a decedent was induced by fraud to transfer his personality, or the transfer was not executed according to law, his heirs and testamentary beneficiaries could sue in equity to set aside the transfer; the estate being otherwise sufficient to pay creditors.

**Courts—Probate Courts—Jurisdiction.**

4. Though Section 1135, L. O. L., declares that the mode of procedure in the county court is in the nature of a suit in equity, the county court, though a court of general and superior jurisdiction in probate matters, is not vested with general equity powers, and, to exercise such authority, recourse must be had to a court of chancery, though the subject-matter of the suit may have been indirectly involved in the probate court.

**Mortgages—Transfer of Debt Secured Thereby.**

5. A proper delivery of a note secured by mortgage carries with it the mortgage.

**Gifts—"Gifts Causa Mortis"—Requisites.**

6. To constitute a gift causa mortis of personal property, the donor must be apprehensive of the near approach of death, and it must appear that he did not recover from the illness with which he was then afflicted, or escape from the peril then impending.

**Gifts—Causa Mortis—Delivery—Necessity.**

7. A gift causa mortis of personal property is not valid without an actual, manual delivery to the donee, or to a third person as his agent, of the subject of the gift, where it is capable of delivery, or by some act equivalent thereto whereby the donor parts with all interest in the property, except where the donee had possession at the time of the gift or where the donor did not have the legal title or possession, or where he destroyed the evidence of the donee's debt to him as the remission of the obligation, in which cases the gift is valid.

**Gifts—Causa. Mortis—Time of Taking Effect.**

8. A gift causa mortis being ambulatory, its validity can only be maintained by the donee or his agent taking and holding possession until the donor's death.

**Gifts—Causa Mortis—Time of Taking Effect.**

9. A gift causa mortis is revocable at the donor's pleasure at any time during his life, and is abrogated by the death of the

donee before the death of the donor, and is also annulled by the recovery of the donor from his illness, or by his delivery from the peril inducing the gift.

### Gifts—Causa Mortis—Promissory Note.

10. The holder of a note, for the purpose of making a gift thereof to a donee, indorsed it in apprehension of the near approach of death. He did not recover from the illness afflicting him, but he died within 60 days thereafter. The note was delivered to a third person, who had been the trustee of the holder prior to the transfer. The third person was not the agent of the donee, who did not obtain possession of the note during the lifetime of the donor. Held, that the gift was not a valid gift causa mortis for want of delivery.

### Gifts—Causa Mortis—Gift of Check—Validity.

11. The delivery of a check as a gift causa mortis to a person other than the donee, but for the donee's use and benefit, and with instructions to deliver the same to the donee, is a sufficient delivery to pass title, though it does not reach the hands of the donee until after the donor's death.

### Gifts—Causa Mortis—Pleading.

12. In an action to recover certain personal property as part of a decedent's estate, an allegation that decedent assigned and transferred the property to Y. as trustee to collect the proceeds, and pay over the same to defendant J. as they should be needed, and at decedent's death to pay the remainder to J. after taking out reasonable compensation for Y.'s services, did not allege a gift causa mortis for failure to charge that the transfer was made by the decedent in contemplation of death, or that there was any delivery of the property to the beneficiary, or to any one for him.

### Gifts—Causa Mortis—Delivery to Agent of Donor.

13. An allegation that decedent in his lifetime delivered certain property in controversy to Y. as trustee to collect the proceeds and pay over the same to J. as they should be needed, and at decedent's death to pay J. any portion remaining after deducting reasonable compensation for Y.'s services as trustee, showed a delivery to Y. as decedent's agent, and not for the benefit of J., and was therefore insufficient to constitute a gift causa mortis.

### Contracts—Validity—Past Consideration.

14. Where J. had already agreed with decedent's agent to care for decedent during the remainder of his life, which con-

tract was unknown to decedent, J.'s subsequent agreement with decedent to perform the identical services in consideration of decedent making J. his residuary beneficiary was unsustainable as without consideration.

**Executors and Administrators—Property Belonging to Estate— Recovery—Right to Sue.**
    15. In general, only the executor or administrator can sue to recover property belonging to the estate, the title of the distributee passing through the personal representative of the deceased owner, but, where such representative himself obstructs the natural course of law for the transmission of the estate to the distributee, the latter may sue joining the representative and the debtor as codefendants, and recover the property for the benefit of the estate.

From Washington: JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Benjamin F. and Agnes B. Hillman, who are the children and only descendents of S. E. Hillman, deceased, against J. P. Young, W. F. Jones, and the Bank of Sherwood, a corporation, to have two promissory notes, and the amount of another note which has been discharged, decreed to be the property of the estate of the decedent, and to be disposed of according to the terms of his last will. The cause, being at issue, was tried, resulting in a decree as prayed for in the complaint, and the defendants appeal.        AFFIRMED.

For appellants there was a brief over the names of *Mr. Samuel B. Huston* and *Mr. W. N. Barrett,* with an oral argument by *Mr. Huston.*

For respondents there was a brief over the names of *Messrs. Allen & Mulkey,* with oral arguments by *Mr. G. W. Allen* and *Mr. Frederick W. Mulkey.*

MR. JUSTICE MOORE delivered the opinion of the court.

It appears from a transcript of the evidence that on April 12, 1907, S. E. Hillman made his last will bequeathing to his stepsons, Irvin and William Yager, $1 each, to

his stepdaughter, Grace Jones, wife of one of the defendants, one share of the capital stock of the defendant bank, devising and bequeathing to the plaintiffs the remainder of his property and nominating the defendant Jones executor. Hillman on July 29, 1907, suffered a paralytic stroke, which with subsequent attacks thereof seriously affected his physical condition. On December 10, 1908, he sold and conveyed his farm in Clackamas County, taking as evidence of a part of the consideration the promissory notes referred to which were made payable to him and his wife, Amanda, for $2,000, $1,000, and $775, and maturing in one, two, and three years, respectively, with interest at the rate of 7 per cent per annum and secured by a mortgage of the premises. Hillman's family thereafter moved to Sherwood, Oregon, where a home was purchased, and the notes mentioned were deposited with the defendant bank. Being confined to his bed and unable to transact any business, he, his wife, and the plaintiffs on December 20, 1908, executed a writing, appointing the defendant Young his trustee, authorizing the person so chosen to receive all money then on hand, to collect the promissory notes as they matured, to incur debts in caring for Hillman during his illness, and at his death to pay over to the legal heirs all moneys remaining, less, however, a reasonable sum as compensation for the trustee's services. Hillman and his wife on February 10, 1909, entered into an agreement under seal, whereby they stipulated that the promissory notes in question, and the home in Sherwood, consisting of a house and two lots, should be equally divided between them. Young accepted the trust, received from Hillman in cash $334.36, and exercised control over the one-half interest in the promissory notes. Hillman's family relations were not pleasant, and in consequence thereof Young acting as his trustee, made an agreement with Jones whereby the latter stipulated to care for,

board, and lodge Hillman during the remainder of his life. Mrs. Hillman testified that for such service Jones was to receive $1 a day, unless her husband should become more infirm, when a greater compensation would be required, which sums were to be paid from the trust fund. Jones testified that no sum was agreed upon, but that he was to be well paid for his services. Pursuant to the terms of the contract, Hillman on February 12, 1909, was taken to the home of his stepson-in-law at Newberg, Oregon. Four days after the promissory notes were obtained from the bank and indorsed by Hillman to the order of Young, who was instructed to collect the sums due thereon as they matured, and from one-half thereof to pay Jones for his services during Hillman's life, and, at his death, to give the remainder to Jones, less, however, a reasonable compensation to the trustee for his services. At the same time Young extended to Jones his promissory note for $1,200 in order to evidence the anticipated claim against the trustee for such care and keeping. Hillman, as a part of the same transaction, executed to Young an assignment of the mortgage which transfer was duly recorded, whereupon the promissory notes were returned to the defendant bank. Hillman died April 11, 1909, and 30 days thereafter his will was admitted to probate, and Jones was appointed executor, and duly qualified for the trust. An inventory and appraisement of Hillman's estate was filed August 10, 1909, but no mention was made therein of any interest in the promissory notes. This suit was instituted January 17, 1910, the complaint setting forth the facts in substance as hereinbefore detailed, and averring that the executor intentionally omitted from, and failed and neglected to list and have appraised, as part of the testator's estate, the half of the promissory notes which Jones claims to own; that all the debts of the deceased have been paid, including medical attendance and funeral

charges, etc.; and that the note for $2,000 has been dis-
charged by the maker who deposited the amount with the
defendant bank. A demurrer to the complaint on the
ground that it did not state facts sufficient to constitute
a cause of suit was overruled, whereupon an answer was
filed setting forth the defendant's theory of the case. A
reply to such new matter put the cause at issue, and a
trial being held resulted in a decree as hereinbefore
stated.

1. It is maintained by defendant's counsel that an
error was committed in overruling the demurrer, which
defect was not subsequently waived. Answering over
after a demurrer has been overruled waives informal
statements in the complaint, but the defense interposed,
unless it contains an express admission, cannot supply
the omission of a material averment of the plaintiff's
primary pleading which defect is never relinquished if
insisted upon. Section 72, L. O. L. *Booth* v. *Moody,* 30
Or. 222 (46 Pac. 884); *Brown* v. *Feldwert,* 46 Or. 363
(80 Pac. 414); *Bade* v. *Hibberd,* 50 Or. 501 (93 Pac.
364). The plaintiffs do not allege that their title to an
interest in the promissory notes was obtained by proceed-
ings in the county court in the administration upon the
decedent's estate, and for that reason it is argued that
the complaint is insufficient. The statute declares that
except in cases of the occupancy of real property by a
tenant under a valid lease, or by a party to whom per-
sonal property has been delivered under a contract of
bailment, an executor or administrator is entitled to the
possession and control of all property of the deceased
until the administration is completed, or such property
has been surrendered to the heirs or devises by order of
the court or judge. Section 1185, L. O. L. The legal
principle contended for by defendant's counsel has been
recognized in the following cases: *Winkle* v. *Winkle,* 8
Or. 193; *Weider* v. *Osborn,* 20 Or. 307 (25 Pac. 715);

*State* v. *O'Day,* 41 Or. 495 (69 Pac. 542) ; *De Bow* v. *Wollenberg,* 52 Or. 404 (96 Pac. 536: 97 Pac. 717).

2. The general rule is that, where jurisdiction of the probate court has once properly attached, no other court will, without special and sufficient reasons, interfere with or go behind its judgments or decrees, except on appeal therefrom or proper review thereof. 1 Woerner, Am. Law Admin., Section 156. A special and sufficient reason as an exception to the principle announced is recognized by our statute, which provides, generally, that whenever the assets of a decedent's estate are insufficient to discharge the valid claims against it, and it is made to appear that the testator or intestate made or suffered a transfer of his property with an intent to defraud his creditors, it is incumbent upon the executor or administrator to apply to the county court or judge thereof for leave to commence and prosecute to final judgment or decree the necessary and proper suits and actions to have such transfers adjudged or decreed void and the property affected thereby discharged from the effect thereof. Section 1279, L. O. L. If it appears from the petition that the facts adverted to and thus set forth are probably true, leave shall be granted to institute and prosecute the necessary suits and actions. Section 1280, L. O. L. If a sale of the property recovered by the suit or action be sufficient to meet the payment of all claims against the estate, the right to or interest in the surplus, if any, remains as if such proceedings had not been allowed or commenced. Section 1281, L. O. L. It will be noted that the act last referred to compels an executor or administrator to invoke the aid of equity to set aside fraudulent transfers of property by his testator or intestate, whose acts he is not permitted to impeach except for the benefit of creditors of the estate, and, when their just claims against it are liquidated, the residue of the property, or the remainder of the fund arising from

a sale thereof, renders the fraudulent transfer good as between the parties and their privies, and binding upon all persons but creditors. 1 Woerner, Am. Law Admin., Section 296.

3. As the authority of a personal representative to maintain a suit or action to set aside transfers of property by a decedent can be exercised only when such alienations are in fraud of the rights of creditors, it must necessarily follow that devisees and heirs in cases of solvent estates, invoking the maxim that there is no right without a remedy, should be permitted to assert their interests to property where transfers thereof by decedents have been induced by fraudulent means or have not been executed with the formalities required by law, and, since the jurisdiction of the probate courts to administer upon the estates of deceased persons is limited to property of which they died seised or possessed, resort must be had to the circuit courts for the protection of their shares.

In *Gardner* v. *Gillihan,* 20 Or. 598 (27 Pac. 220), it was held that the probate court was powerless to try a question of title to property as between an administrator and a third person, but that such adjudication, if necessary, must be had in a court of ordinary jurisdiction. To the same effect are the cases of *Dray* v. *Bloch,* 29 Or. 347 (45 Pac. 772) ; *In re Bolander's Estate,* 38 Or. 490 (63 Pac. 689) ; *Harrington* v. *Jones,* 53 Or. 237 (99 Pac. 935).

4. The statute proclaims that, when the county court exercises jurisdiction in probate matters, the mode of procedure is in the nature of a suit in equity as distinguished from an action at law. Section 1135, L. O. L. That tribunal in probate matters is a court of general and superior jurisdiction. *Tustin* v. *Gaunt,* 4 Or. 305; *Farley* v. *Parker,* 6 Or. 105 (25 Am. Rep. 504) ; *Monastes* v. *Catlin,* 6 Or. 119. It is not, however, vested with general equity powers, and, in order to exercise· such

authority, recourse must be had to a court of chancery, though the subject-matter of the suit may have been indirectly involved in the probate court. *Richardson's Guardianship,* 39 Or. 246 (64 Pac. 390) ; *Dunham* v. *Siglin,* 39 Or. 291 (64 Pac. 661) ; *Rutenic* v. *Hamaker,* 40 Or. 444 (67 Pac. 196) ; *In re Roach's Estate,* 50 Or. 179 (92 Pac. 118).

Under the practice prevailing in this State, the complaint states facts sufficient to constitute a cause of suit, and no error was committed in overruling the demurrer.

The remaining question is whether or not the formal assignment to Young of the mortgage, the indorsement to the order of such trustee of a half interest in the promissory notes, and the return thereof to the defendant bank where they remained until after Hillman's death, was such a transfer to Jones of the title and possession of the negotiable instruments as amounts in law to a donation *causa mortis.* It will be remembered that the written assignment of the mortgage was executed by Hillman to Young, who caused it to be duly recorded.

5. Without such a formal transfer, however, a proper delivery of the promissory notes would have carried with a surrender of their possession the collateral mortgage given to secure their payment. *Druke* v. *Heiken,* 61 Cal. 346 (44 Am. Rep. 553). The decision of this part of the case must therefore rest upon the disposition which Hillman made of the promissory notes.

6. The prerequisites of a valid donation *causa mortis* are, a gift of personal property must have been made while the donor apprehended the near approach of death, and it must appear that he did not recover from the illness with which he was then afflicted or escape from the peril then impending. 1 Woerner, Am. Law Admin., Section 60.

7. There can be no valid donation *causa mortis* without an actual manual delivery to the donee personally or

to some third person as his agent of the subject of the
gift, if it is capable of such delivery, or by some act
equivalent thereto whereby the donor parts with all inter-
est in the property. 1 Woerner, Am. Law Admin., Sec-
tion 61. Exceptions to such delivery exist in cases where
the donee already had possession of the property; where
the donor did not have the legal title or possession there-
of; or where he destroyed the evidence of the donee's
debt to him as a remission of the obligation. 21 Am. Law
Rev. 732, 752.

8. As a corollary from the legal principles thus stated,
it follows that, since a donation *causa mortis* is ambula-
tory, the validity of the gift can be maintained by the
donee or his agent only by taking and holding possession
of the property until the death of the donor. 21 Am. Law
Rev. 760.

9. A gift *causa mortis* is revocable at the donor's
pleasure at any time during his life, and is abrogated by
the death of the donee before that of the donor. The
donation is also annulled by the recovery of the donor
from the illness, or by his delivery from the peril which
inducing the gift. Woerner's Am. Law Admin., Sec-
tion 62.

10. Applying these general rules to the case at bar, it
is evident from Hillman's enfeebled physical condition at
the time he indorsed the promissory notes that he appre-
hended the near approach of death, and that he did not
recover from the infirmity with which he was afflicted,
but that he died within 60 days after being taken to the
home of his stepdaughter and her husband. For the
care and attention bestowed pursuant to the terms of the
agreement Jones received $185, but neither of the
promissory notes nor any part of the proceeds thereof
was delivered to him during Hillman's life. If Young
received the notes as the agent of Jones, a delivery
thereof to the latter before Hillman died was not

essential to the validity of a gift *causa mortis*. *Varley* v. *Sims,* 100 Minn. 331 (111 N. W. 269: 8 L. R. A. [N. S] 828: 117 Am. St. Rep. 694: 10 Ann. Cas. 473). If, however, Young was the agent of Hillman, the death of the latter, under the circumstances detailed, severed their relations, and a delivery thereafter by Young of the notes or the fund arising therefrom would not validate the gift *causa mortis*. *Wilcox* v. *Matteson,* 53 Wis. 23 (9 N. W. 814: 40 Am. Rep. 754); *Walter* v. *Ford,* 74 Mo. 195 (41 Am. Rep. 312). Thus where a woman in anticipation of death delivered to her agent a number of certificates of stock duly assigned in writing to certain persons, telling him she wished to retain control of the stock and use so much thereof as she might need during her life, but that after her death she desired him to deliver what certificates remained undisposed of to the proper assignees, and thereafter, while living, she received the accrued dividends on the entire stock and disposed of some of the certificates, it was held that there was no gift *causa mortis* as to the certificates remaining in the agent's hands after her death. *Noble, Adm'r,* v. *Garden,* 146 Cal. 225 (79 Pac. 883: 2 Ann. Cas. 1001).

11. The delivery of a check as a gift *causa mortis* to a person other than the donee, but for the donee's use and benefit and with instructions to deliver the same to the donee, is a sufficient delivery to pass the title, though it does not reach the hands of the donee until after the donor's death. It was held that the person to whom the delivery was made would be presumed, in the absence of any contrary showing, to be the trustee of the donee, and that, where a donation *causa mortis* is beneficial to the donee and imposed no burdens upon him, acceptance by him would be presumed as a matter of law. *Varley* v. *Sims,* 100 Minn. 331 (111 N. W. 269: 8 L. R. A. [N. S.] 828: 117 Am. St. Rep. 694: 10 Ann. Cas. 473). The evidence in the case at bar overcomes the presumption

that Young, to whom the promissory notes were assigned, was the agent of Jones. As he had been the trustee of Hillman prior to the assignment, the transfer of the notes to him evidences a continuation of such relationship, and since he did not, during Hillman's life, deliver the notes or the fund arising therefrom to Jones, his authority to do so ceased with the death of Hillman. The attempt thus to bestow his property was an effort on the part of Hillman to make a testamentary disposition thereof in contravention of the statute, and, as it was not valid as a gift *causa mortis,* the decree should be affirmed, and it is so ordered.             AFFIRMED: REHEARING DENIED.

MR. JUSTICE BURNETT concurs in the result of the opinion.

Decided January 21, 1913.

## ON PETITION FOR REHEARING.

(129 Pac. 124.)

MR. JUSTICE BURNETT delivered the opinion of the court.

In an opinion by Mr. Justice MOORE reported in 127 Pac. 793, we affirmed a decision by the circuit court in favor of the plaintiff. In an able petition for a rehearing the counsel for the defendant discussed two questions: First, the rights of the heirs to maintain this suit; and, second, whether or not there was sufficient delivery of the personal property in question as a gift to establish title in the defendant Jones. It is proposed to treat these in their inverse order.

12. Considering the transaction in the light of the law about *donatio causa mortis* in addition to what has already been said by this court on that subject as reported in the opinion referred to, it is proper to note the plead-

ings of the defendants Young and Jones in that respect. They allege:

"That Samuel E. Hillman, deceased, came to the residence of the defendant W. Franklin Jones about February 12, 1909, for the purpose of making it his permanent home during the remainder of his natural life, and the said Samuel E. Hillman, being desirous that the defendant W. Franklin Jones should receive any portion of his estate which should remain after his death, duly assigned and transferred to the defendant J. P. Young as trustee the promissory notes mentioned in the complaint, and also duly assigned and transferred in writing a mortgage securing the same to the said J. P. Young and instructed the said J. P. Young to collect the proceeds thereof so far as the same should belong to the said Samuel E. Hillman, and pay them over to the said W. Franklin Jones as they should be needed, and at the death of the said Samuel E. Hillman, if any portion thereof remained in the hands of said J. P. Young, trustee, he should deliver the same to W. Franklin Jones, except such sum as should be necessary to pay him a reasonable compensation for his services as such trustee."

This allegation falls short of pleading a *donatio causa mortis,* because it does not say that it was made in contemplation of the death of the donor, neither does it aver delivery of the property to the defendant Jones or to any one for him. On its face this portion of the answer makes the ultimate interest of the defendant Jones merely conditional because he is only to receive what may be left of the proceeds of the property after Mr. Young had managed and disposed of it according to the directions of the donor and had paid himself a reasonable compensation for his services.

13. Further answering the argument for a *donatio causa mortis,* although in our judgment the averment does not support such a gift, it is manifest upon the face of this pleading that Young was to act as the agent and according to the instructions of Hillman, and not according to the directions, or for the interests, of Jones, except

incidentally. These features fairly distinguish this case from that of *Deneff* v. *Helms*, 42 Or. 161 (70 Pac. 390). In that case the donor was dangerously afflicted in his last illness. He had $2,000 on deposit in a bank and $200 in the possession of an individual. His private depositary and an officer of the bank were at his bedside, and he there indorsed to the defendant Helms his certificate of deposit in the bank, and directed its officer to pay the fund to the defendant. He gave the same directions to his individual bailee. On the same day these directions were carried into effect, and the defendant reduced both sums of money to his own possession. The donor died the following day. He had revoked all previous agencies employed in the custody of his money, and expressly directed the same to be paid at once to the donee. In the present case the former agency of Young was continued with directions to manage the property in his possession as before, and expend possibly all of it during the lifetime of the donor on condition that, if anything remained, he was to pay it to the defendant Jones. The transaction was simply a perpetuation of the former relationship between Young and Hillman, and, of course, as an agency terminated at the death of the latter. Nothing remains to be said on the subject of *donatio causa mortis,* the law of which is so clearly pointed out in the opinion of Mr. Justice MOORE.

14. The defendants endeavor to reach the same result of conferring title upon Jones by pleading a contract made by him with the decedent after the latter had come to live with Jones, whereby the latter was to take care of Hillman during his life, in consideration of which Hillman was to convey the property to Young for management substantially as before stated. It will be noted, however, in this connection, as found by the court, that Young by virtue of his authority as agent had previous to this time made a contract with Jones for the perform-

ance of substantially the same service mentioned in the defendant's answer, but without any condition making Jones the residuary beneficiary, and that this contract was unknown to Hillman. Having agreed to do the very things which he promised in the contract alleged, the renewed stipulation of Jones to perform the identical services would not constitute any consideration sufficient to support the agreement averred which in turn would not operate to transfer any property from Hillman to Jones. Concerning the indorsement of the notes to Young, it is sufficient to say that equity, regarding the substance rather than the mere form, will hold that the effect of the indorsement was not to pass the absolute title to the property to Young, but simply to lodge it in his hands as the custodian of the same for the benefit of Hillman. It follows that to all intents and purposes, at least from an equitable standpoint, the notes and mortgage in question belonged to Hillman at the time of his death as before and were properly an asset of his estate. It is plain that when the owner of property *sui juris* parts with the title, whether in contemplation of death or otherwise, neither his personal representatives nor his heirs can recover the same, for they stand in no better position than the donor himself occupied before his demise. An exception to this rule is found in the procedure authorized by Sections 1279 and 1280, L. O. L., in which, when so directed by the county court in a proper case, an administrator or executor may sue to set aside a conveyance made by the decedent in his lifetime with intent to defraud creditors. The discussion of this exception in the former opinion did not and was not intended to exclude the right of a personal representative to pursue any remedy afforded him by law or equity to reduce the possession choses in action surviving to him from the decedent. As we have shown, Hillman did not part with his title to the notes involved either

as a gift in contemplation of his death, or by virtue of the contract averred, so that, when he died, they were proper assets for administration.

15. Subject to the exception to be mentioned, the general rule is that only the executor or administrator can litigate for the recovery of the property belonging to his decedent's estate. The title to such property inuring to the heir must come through the personal representative of the deceased owner. An exception, however, exists when the representative himself by collusion with the debtor or otherwise obstructs the natural course which the law establishes for the transmission of the estate to the heir. Under such circumstances, the latter may join as defendants both the personal representative of his ancestor and the person from whom is due the debt or duty to the estate, and by a suit in equity reduce to the possession of the person administering the estate the assets thus outstanding, so that they may be included in the process of winding up the affairs of the decedent. Such litigation is in aid and not in derogation of the operation of the law of descents and distribution. In other words, while the personal representative, if he will, may exercise exclusively the power of reducing to possession the effects of the estate, yet, if he will not act, that prerogative may for the time being pass from him to the heir to be used for the benefit of the estate, to the end that the lawful course of descent and distribution may not be hindered or impeded. In *Rowell* v. *Rowell.* 122 Wis. 1 (99 N. W. 473), it is said in answer to the contention that the plaintiffs there showed no right of action in themselves because they as heirs or distributees had no title to any property left by their ancestor, all title to such property being vested in the administrator that: "Doubtless the law is so as to the legal title to any specific personal property. Nevertheless the equitable beneficial interest in all property of a solvent estate is

in the legal distributees during the whole period of administration. If that interest is invaded, they must have the right that a court's aid be invoked. Primarily and ordinarily that right is sufficiently protected by the power and duty of the administrator to bring suit to protect or reclaim any property of the estate. When, however, he allies himself with the wrongdoer, and serves as an obstacle to, instead of a protector of, the rights of his *cestui que trustent,* courts of equity have no hesitation in recognizing the equitable interests of the latter as sufficient to give them standing as plaintiffs in a suit to accomplish that which the administrator ought with all diligence and good faith to pursue but will not." Again, in *Trotter* v. *Mutual Reserve Fund Life Association,* 9 S. D. 596 (70 N. W. 843: 62 Am. St. Rep. 887), it is stated that: "As a rule actions to recover debts due an estate must be maintained by the executor or administrator and not by the heirs or creditors; but to this rule there are exceptions, as where there is collusion between the debtor and personal representative, or he is insolvent, or where the circumstances are such that the reason of the rule ceases. When an administrator refuses to bring an action upon a claim due the estate, heirs, creditors, and others interested in its collection should have an adequate remedy. Must they apply to the county court to have the administrator removed and one appointed who will perform his duty? The order of removal may be appealed from, and while the parties are engaged in this idle preliminary litigation the debt may be lost. A new administrator would have to sue in the circuit court. Why cannot those interested in the estate do directly and at once what it is conceded may be done indirectly and after vexatious delays? The debtor cannot complain. It matters not to him who is plaintiff because the court will provide that the proceeds of the judgment shall be distributed according to law, and such

judgment will be a bar to another action for the same debt. It is in effect an action for the benefit of the estate brought in the name of heirs or creditors because the personal representative has refused to bring it." This doctrine is also recognized in the following cases: *Wiggins* v. *Cracraft.* (Ky.), 40 S. W. 907; *Worthy* v. *Johnson,* 8 Ga. 236 (52 Am. Dec. 399) ; *McChord* v. *Fisher's Heirs,* 13 B. Mon. (Ky.) 194; *McLendon* v. *Woodward,* 25 Ga. 252; *Loyd* v. *Loyd's Adm'r,* 46 S. W. 485 (20 Ky. Law Rep. 347) ; *Mason* v. *Spurlock,* 63 Tenn. (4 Baxt.) 554; *Lacy* v. *Williams,* 8 Tex. 182; *Matheny* v. *Ferguson,* 55 W. Va. 656 (47 S. E. 886) ; *Tillery* v. *Tillery,* 155 Ala. 495 (46 South. 582). Here it is manifest by the allegations of the complaint as well as avowals of the answer of the executor Jones that he was claiming the property in question as his own, and would not take any steps to reduce it to the possession of the estate that it might be distributed to the heirs. The case was ripe for the interposition of equity at the suit of the heirs in aid of proper administration of the estate, in order that the course of the descent and distribution laid down by the law might not be hindered or obstructed by the unwarranted assumption of the administrator.

The transaction delineated in the pleadings did not amount to a *donatio causa mortis,* for the reason, among others, that there was no delivery. Considered as a contract for the transfer of the property to Jones, it failed for want of consideration. So far as it was tantamount to a testamentary disposition of the estate, it was vain because it was not executed in conformity to the statute relating to wills. It would have been easy for the testator to execute a new will in favor of Jones or a codicil to the former one for a like purpose; but he did neither, in default of which we cannot dispose of his estate otherwise than as he left it.

We adhere to the conclusion reached in the former

opinion, but with this difference, that neither party shall recover costs or disbursements from the other in this court.                    MODIFIED AS TO COSTS: AFFIRMED.