Petition for temporary administrator argued June 21; petition denied June 28; argued on the merits July 7; reversed July 14; rehearing denied September 13, 1938

IN RE WINTERS' ESTATE
WINTERS ET AL. *v.* WINTERS ET AL.

80 P. (2d) 714, 81 P. (2d) 140)

638

In Banc.

*McCamant, Thompson, King & Wood,* of Portland, for appellants.

*Beach, Simon & Green* and *O. C. Roehr,* all of Portland, for respondent.

KELLY, J. On November 7, 1936, Herman Winters died intestate in the city of Portland, Multnomah county, Oregon. At the time of his death and for a long time prior thereto he was a resident and inhabitant of Multnomah county, Oregon.

On December 2, 1936, pursuant to petition therefor William C. Winters, brother, and Albertina Dahlke, sister of said deceased, were appointed by the probate

department of the circuit court as administrator and administratrix, respectively, of the estate of said decedent.

On April 28, 1937, a petition was filed in said probate court by certain heirs of said decedent asking for a bill of discovery and the issuance of a citation to said administrator and administratrix to show cause why they should not be discharged as such officers.

After a hearing before said probate department which began on October 6, 1937, and during which testimony, covering, when transcribed, 947 pages of typewritten matter, was taken, an order was made by said probate court on February 15, 1938, removing said William C. Winters and Albertina Dahlke as administrator and administratrix respectively and appointing A. C. Callan administrator de bonis non of said estate.

On March 25, 1938, the transcript on appeal from said last named order was filed in the supreme court. No supersedeas bond has been filed. Appellants' abstract was filed on April 13, 1938. Appellants' brief was filed on April 30, 1938. Respondent's brief was filed on May 19, 1938, and the case was docketed on May 31, 1938.

On May 17, 1938, the petition under consideration at this time was filed.

On May 23, 1938, an order was made, based upon a written stipulation and an appropriate showing, by virtue of which order the time for making an appearance by said A. C. Callan in response to said last named petition was enlarged and extended to and including June 7, 1938. On June 6, 1938, said A. C. Callan filed a demurrer to said petition. On June 17, 1938, appellants filed their brief on said demurrer. On the following conference day, viz: June 21, 1938, said petition, demurrer and brief were submitted to the court.

.The foregoing chronology·of filings and orders in the supreme court is set out to refute any possible suggestion that the record of this case has not received the same prompt and careful attention that is given to other cases.

The question here presented is whether the petition states facts which would justify this court in granting the relief sought, namely the appointment by the supreme court of a temporary administrator herein.

Two phases of the case are presented, first, that which presents the question whether, in a court having jurisdiction to appoint a special administrator, the facts alleged should be held to warrant such appointment; and, second, whether the supreme court has jurisdiction to try the issues tendered by the petition.

As applied to the estate in suit, the facts disclosed by the petition pertinent to the relief sought are:

That since his appointment and qualification as administrator said Callan has received up to and including April 23, 1938, the following receipts:

| | |
|---|---:|
| February 16-28, 1938 | $ 1,692.80 |
| March, 1938 | 4,539.11 |
| April 1-23, 1938 | 4,246.49 |
| Total | $10,478.40 |

And that during the same period his accounts with the United States National Bank and the First National Bank disclose disbursements totaling $41,326.63.

Among these disbursements were the following:

| | |
|---|---:|
| Irene Pringle, stenographic service | $ 30.00 |
| Beulah Johnstone, salary | 135.00 |
| A. C. Callan, Postal Telegram | 2.05 |
| Stamps | 2.00 |
| E. T. Hedlund, Postmaster, stamps | 5.00 |
| Norris, Beggs & Simpson, rent room, Oregon Building | 40.00 |

E. J. Chapman & Co., Office furniture pur-
chased by administration ............................... 51.00
William Leeb, painting Sherman Hotel ........... 283.75
Kilham Stationery & Printing Co., supplies 9.35
J. W. Maloney, Collector of Internal Social
Security Tax, payments Beulah John-
stone and Irene Pringle ................................... 2.40

Total ...............................................................$560.55

"That Irene Pringle, to whom payments have been made by A. C. Callan, administrator, as shown hereinabove for stenographic services, is now and for a period of some months has been an employee of said A. C. Callan in the conduct of a real estate business, Room 321 Oregon Building, Portland, Oregon. That said A. C. Callan has maintained his offices at said Room 321 Oregon Building, Portland, Oregon, for more than two years last past. That Beulah Johnstone, to whom payments for salary have been made by said A. C. Callan, administrator, for some months has been and now is an employee of said A. C. Callan in his said office at the location hereinbefore mentioned. That A. C. Callan has no employees in the conduct of his said real estate business other than said Irene Pringle and Beulah Johnstone."

In said petition extended reference is made to other estates in which A. C. Callan has acted as appraiser and to still other estates in which he has acted as administrator.

We quote further from the petition herein:

"That the William Leeb to whom payment in the sum of $283.75 was made, as shown hereinbefore, is the same William Leeb to whom payments were made by the said A. C. Callan while acting as administrator of the estate of Bridget Ryan, deceased, and is the same William Leeb who has served as appraiser and received fees as shown in Table IV appended hereto. That your petitioners are advised and therefore allege that A. C. Callan did not secure estimates for the

painting on the Sherman Hotel; that said work could have been done at a total expense not exceeding $145.00.

"That the total number of collections of rent to be made by the said A. C. Callan each month does not exceed the number of eighteen and that the majority thereof are promptly made by the lessees of the properties of said estate, and that the said A. C. Callan, as administrator, does not have the need to occupy any additional office space or to employ any additional stenographic service in the performance of his duties as such administrator.

"That your petitioners verily believe and therefore represent to this court that the said A. C. Callan intends to and will use the office of administrator of said estate for the furtherance of his private affairs, for the distribution of personal favors, and payment of various sums of money to persons closely connected with the said A. C. Callan and that the said A. C. Callan will use the said office of administrator of said estate as a means of defraying the expenses for stenographic service, office space, and equipment ordinarily incident to the regular conduct of his business in the City of Portland, State of Oregon, at the location hereinbefore mentioned."

It will be noted that it is not alleged that Callan has filed any account in the probate court wherein he claims credit for the items above set out. Neither is there any allegation that he has served notice upon any one that he intends to claim credit therefor.

■ Moreover, Mr. Callan has given one undertaking in the sum of $100,000, and also an additional undertaking in the sum of $50,000 for the faithful performance of his duties as administrator. In view of the fact that such undertakings have been given, an issue involving less than $600 presents insufficient ground for holding that irreparable loss to the estate is imminent unless Mr. Callan be removed as administrator de bonis non.

■ The controlling phase of this record, however, lies in the fact that the supreme court is a court of review; and the petition under consideration seeks to invoke the exercise of original jurisdiction.

Section 6 of the original Article VII of the Constitution of Oregon provides:

"The supreme court shall have jurisdiction only to revise the final decisions of the circuit courts." Vol. 1, Oregon Code 1930, p. 146.

Section 2 of the later Article VII of the Constitution provides:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted unless otherwise provided by law. But the supreme court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings." Vol. 1, Oregon Code 1930, p. 130.

. The proceedings sought to be initiated by the petition herein is neither mandamus, quo warranto nor habeas corpus.

"Proceedings for the administration of the estates of decedents are *in rem*. Such being their nature, it is clear that an appeal from merely one of the numerous orders, as, for instance, an appeal from an order appointing an administrator, does not transfer the estate to this court and authorize us to make orders concerning its administration. The estate remains in the probate department of the lower court." *In re Workman's Estate*, 156 Or. 333 (65 P. (2d) 1395, 68 P. (2d) 479).

■■ It is to the probate department of the circuit court in the first instance that a petition of such a nature as the one in suit must first be presented. The supreme court may review a record made thereon in

said probate court, but cannot exercise original jurisdiction in reference thereto.

None of the alleged facts upon which the petition in suit is based could have been shown in the record comprising the transcript of testimony herein for the reason that Mr. Callan's appointment was not made for more than three months after the taking of such testimony had been concluded.

The petition does not state facts justifying any action thereon by this court and for that reason said petition is dismissed.

■ In disposing of this matter the writer has given full effect to the prevailing opinion in *In re Workman's Estate*, supra. In that case the writer dissented. He has not changed his views as expressed in his dissent therein; but the court is controlled by the doctrine of the prevailing opinion therein until if, at all, it may be overruled.

RAND and BELT, JJ., did not participate in this opinion.

---

Argued on the merits July 7; reversed July 14; rehearing denied September 13, 1938

ON THE MERITS

(81 P. (2d) 140)

In Banc.

*Ralph H. King,* of Portland (McCamant, Thompson, King & Wood, of Portland, on the brief), for appellants.

*Cecil H. Greene,* of Portland (Beach, Simon & Greene and O. C. Roehr, all of Portland, on the brief), for respondents.

KELLY, J. As presented on this appeal, this is a proceeding to remove William C. Winters and Albertina Dahlke, as administrator and administratrix, respectively, of the estate of Herman Winters, deceased. The petitioners are Herwin Winters, Fred Winters, Louis R. Winters, Herbert Winters, Viola Zabel and Omar Winters. Herwin Winters is the son and sole heir at law of Bernhardt Winters, a deceased brother of Herman Winters, decedent herein. Fred and Louis E. Winters are the sole heirs at law of Albert Winters, a deceased brother of said decedent. Herbert and Omar Winters are sons and Viola Zabel is a daughter of Henry Winters, a deceased brother of said decedent. William C. Winters and Albertina Dahlke are prosecuting this appeal from an order removing them as administrator and administratrix respectively and appointing A. C. Callan administrator de bonis non herein. By the terms of section 7-502, Oregon Code 1930, said William C. Winters and Albertina Dahlke should be designated as appellants herein and the opposing parties should be designated as respondents; but to avoid a confusion of terms, the appellants herein having been respondents in the probate court, we will refer to them as the administrators and we will continue to use the designation of

petitioners in referring to the petitioners in the trial court.

The question to be determined is whether a sufficient showing has been made by the petitioners to justify the removal of the administrators and the appointment of Mr. Callan.

In their petition the petitioners specifically named The United States National Bank of Portland, Oregon, as a competent institution to be appointed administrator de bonis non herein. During the course of the hearing upon said petition to remove said administrators, the administrators, as an offer of compromise, stated that in order to determine the matter amicably, Mrs. Dahlke would resign and would join in consenting to the appointment of the First National Bank as coadministrator with Mr. William C. Winters. This offer of compromise was rejected.

As stated, Mr. Callan was appointed despite the evident preference of all interested parties for the appointment, if one should be made, of one of the banks of Portland, and despite the fact that he was a witness for the petitioners and testified upon the contested subject of the value of a particular apartment house placing a value thereon appreciably higher than the value given by the witnesses called by the administrators.

Originally, the petition upon which this proceeding rests embraced four principal issues. The nature of the petition is that of a bill of discovery and the first of the principal issues was presented and heard upon that phase of the case separately and apart from the proceeding now under consideration. The second issue presented in the petition is that of an alleged trust alleged to have been created in favor of certain of his nieces and nephews by deceased with respect to prop-

erty inherited by deceased from his mother. This issue was abandoned by petitioners at the hearing of the present proceeding in the probate court. The third issue is that of whether the interest of William C. Winters and Albertina Dahlke, the administrator and administratrix respectively, originally appointed herein, are so adverse and hostile to those of the petitioners herein as to disqualify them from acting as such administrator and administratrix. The fourth issue arises upon the allegation that decedent was the owner of furniture and other personal property of the Embassy hotel, which has not been accounted for, or set forth, and described in the inventory filed by the said administrators, and upon the further allegation,—

"That your petitioners further believe and, therefore, allege that other assets of the decedent have not been listed in the inventory on file herein, the exact character and nature of which can only be disclosed by a full hearing as herein prayed for."

Aside from the furniture of the Embassy hotel, the property claimed by petitioners to have been owned by deceased at his death and omitted from the inventory consists of certain real property in Douglas county, certain other real property in Hoquiam, Washington, nine hundred and fifty dollars represented by a check drawn in that sum upon the funds of deceased on August 19, 1936, in favor of Herman Dahlke; six hundred and twenty dollars and twenty-four cents ($620.24) being an amount for which alleged excessive credit was given to William C. Winters upon the books of account of Herman Winters which were kept by said William C. Winters with reference to accrued rental from the Premier hotel of which deceased and said William C. Winters were joint owners; nine hundred and seventy three dollars and eighteen cents alleged excess of money

disbursed of funds of decedent for the benefit of Albertina Dahlke; four thousand dollars par value of Vancouver Commercial Hotel bonds delivered to Albertina Dahlke; Studio bonds delivered to the wife of William C. Winters; twenty-one thousand dollars par value Vancouver bonds claimed by Herbert Dahlke; and unpaid rental upon the Palace hotel due from Herbert Dahlke.

The explanation of the administrators with respect to the furniture of the Embassy hotel is that practically all of the furniture of that hotel, belonging to decedent at his death, was built into the apartment house, being in the main, refrigeration, electric stoves, wall beds and equipment of that nature; and that the listing and appraisal of the apartment house itself complied with the requirements of an inventory.

We realize that to support this explanation we are required to determine what showing is in the record relative to the ownership of the furniture not so affixed to the building. Upon that subject, the only testimony is to the effect that Herbert Dahlke and the tenants of the hotel owned the furniture except the hall carpets, the refrigeration, the wall beds and the electric stoves. It is true that the petitioners comment upon the fact that two weeks after he had executed a bill of sale to said Herbert Dahlke conveying all personal property, etc., of said hotel to said Dahlke, decedent executed a renewal mortgage to H. B. Davis covering the electric ranges, refrigerators, carpets, beds and all other furniture, fittings and equipment installed and situate in the apartment, etc. Mr. Davis testified, however, that he understood that the items included in the mortgage were part of the building.

As to the Douglas County real property not included in the inventory, the interest of decedent therein was

an undivided one-eighth thereof. His sister, Mrs. Albertina Dahlke, also owned an undivided one-eighth interest therein. Mr. William C. Winters testified that he employed a cruiser to examine the property and make report thereon and that the information thus obtained was to the effect that the property in question was not of sufficient value to justify the payment of taxes thereon. This is not denied or controverted.

The property in Hoquiam, Washington, is beyond the jurisdiction of the Oregon probate court. Mr. William C. Winters testified that the attorney then representing him, but who is now deceased, advised him that the rentals therefrom were not part of the Oregon estate and for this reason he kept them in his own individual bank account. Complaint is made because the administrators did not institute administration proceedings on this property in the state of Washington. No loss to the estate has been shown by the delay in that respect.

On or about the 19th day of August, 1936, a check was drawn upon the account of decedent by William C. Winters, who was authorized generally to sign checks for decedent. This check was in the sum of $950, and drawn in favor of Herbert Dahlke. The purpose of this check was to guard against the eventuality of decedent's death causing delay in payment to the O'Donnell estate of rentals collected by decedent as agent for that estate.

We quote from the testimony of William C. Winters:

"Q. Now, you testified on direct examination, on the 19th of August, 1936, that you issued a check to Herbert Dahlke for $950 to cover any rentals which you might have on hand belonging to the O'Donnell estate in case of the sudden death of Herman Winters, is that correct?

A. Right.

Q. Have you ever received a repayment of that sum from Herbert Dahlke?

A. I have.''

Mr. William C. Winters' testimony further discloses that thereafter he acted as agent of the O'Donnell estate in making collection of rentals upon the Fine Arts Building and in making returns to the O'Donnell estate as his brother, the decedent, had done.

There is no contradiction in the record of the showing thus made that the funds involved in the transaction of the nine hundred and fifty dollar check to Herbert Dahlke were not funds of the estate in suit but those of the O'Donnell estate.

Petitioners complain of the omission from the inventory herein of the income from the Premier hotel from January 1 to March 18, 1936, in the sum of $620.24 because of an alleged excessive credit taken in such sum by William C. Winters in his account with decedent. Mr. William C. Winters testified that the account for rentals was settled and discharged and a payment made upon his salary as bookkeeper for decedent by the transfer and delivery to him by decedent of bonds for the face value of $7,500.

The item of $973.18, claimed by petitioners to be the excess of moneys disbursed out of the funds of decedent for the benefit of Albertina Dahlke and due from her to the estate of decedent, is based upon the ledger account of decedent, pertains and purports to reflect the condition of that account prior to the operation of the Lorraine hotel February 27, 1936, at which time decedent transferred his interest in said hotel to Mrs. Dahlke.

Decedent lived with his sister Mrs. Dahlke. The relationship was very close. The nurse attending him testified that in the closing hours of his life, while

sleeping, decedent would repeat and rerepeat the name which through the years he had evidently applied to her, "Tena". Mrs. Dahlke's testimony impresses one with the complete and absolute confidence she reposed in decedent.

The balance thus claimed by petitioners does not appear to have been urged at the hearing and its amount is comparatively so small when we consider the value of the estate of decedent appraised at $870,865.63, that we cannot attribute bad faith on the part of the administrators in failing to take cognizance of the purported balance.

The delivery of the Vancouver Commercial Hotel bonds to Albertina Dahlke and Herbert Dahlke, and the delivery of the Studio bonds to Mrs. William C. Winters are shown by the only direct testimony on the subject in the record.

There is no testimony that decedent's mental faculties were impaired until from thirty-six to forty-eight hours before his death. There was an offer of proof to the contrary by petitioners, which was rejected by the trial court, but the petitioners have not appealed, and for that reason no consideration is given to such offer of proof.

An alleged balance of $410.48, which petitioners claim is shown by the ledger accounts of decedent to have been due decedent's estate from Herbert Dahlke and wife arising from the operation of the Palace hotel is also made the basis of the charge of nonfeasance on the part of the administrators in failing to include said alleged account in the inventory herein.

This and all the other items upon which there might be any question are fully protected by the administrators' undertaking which they have furnished in the sum of one hundred and seventy thousand dollars.

652

■ There is no dispute that in order to render the administrators subject to removal because of an omission, or because of omissions of assets from the inventory, the same must be made in bad faith with intent to take advantage of the estate.

■ We think that this record does not disclose bad faith on the part of the administrators and for that reason error was committed in ordering them removed.

What we have said upon the contested features of this case must be deemed to be without prejudice to a presentation of further claims thereon, except as to the propriety of the order in question here, which is the order of removal of the administrators.

■ The adverse interests of the administrators are not obstacles to the institution and maintenance by the heirs, creditors and others interested of a suit based upon a claim or claims due the estate: *Hillman v. Young,* 64 Or. 73, 90 (129 P. 124, 125); *Riddle v. Isaacs,* 97 Or. 404 (192 P. 398).

For the foregoing reasons, the order of the probate department of the circuit court removing the administrators and appointing Mr. A. C. Callan administrator de bonis non is reversed and this proceeding remanded with instructions to reinstate William C. Winters and Albertina Dahlke as administrator and administratrix, respectively, of the estate in suit.