Argued October 14, affirmed November 17, 1925.

# A. C. FORRESTER ET AL. *v.* HAUSER CONSTRUCTION COMPANY.

### (240 Pac. 873.)

**Appeal and Error — Not Error to Refuse Defendant Opportunity to Refute Mere Conclusions of Law Pleaded by Plaintiffs in Complaint.**

1. In action for breach of contract, where plaintiffs averred promptness in commencing and diligence in performance thereof, *held*, such averments were mere conclusions of law, and defendant was not prejudiced by denial of its offer to refute such conclusions in view of fact that defendant was permitted to show specific dates, when plaintiffs commenced to perform contract and extent of such performance, and contracts specifically provided that defendants should designate time of commencement of performance, and it was not shown plaintiffs did not commence performance in obedience thereto.

**Appeal and Error — Exclusion of Testimony Relative to Questions not Within Issue for Determination not Prejudicial.**

2. In action on contract, *held*, it was not erroneous to exclude testimony relative to comparative time required to perform contract by hand and by machine, since such question was not within issues for determination.

**Trial — Requested Instruction That Plaintiff had Only Reasonable Time to Complete Work Under Contract, Though Correct, Properly Refused When Coupled With Erroneous Instruction.**

3. In action on contract to apply gunite to concrete, requested instruction by defendant that plaintiff had only reasonable time in which to complete work, though correct, was properly refused, where it was coupled with erroneous instruction.

**Trial — Requested Instruction That Plaintiff must Offer or Demand Right to Perform Properly Refused, Where There was Testimony of Defendant's Repudiation Relieving Plaintiffs of Such Offer.**

4. In action on contract to apply gunite to concrete, a requested charge by defendant that, if plaintiffs did not declare their intention and demand right to complete work, then as a matter of law plaintiffs abandoned work and could not recover, *held* erroneous and properly refused, in view of testimony showing defendant repudiated contract, thereby relieving plaintiff from making offer of such performance.

Contracts—Declaration by One Party to Contract, Prior to Performance, That He Would not Comply With Contract, Excuses Offer, or Performance by Other Party.

5. A declaration, made by one party to a contract prior to the time for performance, that he would not comply therewith, excuses offer to perform by other party before bringing action for breach.

Trial — Requested Instruction Relative to Defendant's Removal of Equipment from Place of Performance Properly Refused, Omitting Material Element of Intent Actuating Removal.

6. In action on contract to apply gunite to concrete, where plaintiff claimed that defendant's removal of equipment from place of performance rendered its performance impossible, *held*, defendant's requested instruction relative to such removal was properly refused, inasmuch as it omitted intent as a material element in actuating it in the removal of its equipment; such question being one of fact for jury in view of conflicting evidence.

Trial — Instruction That Defendant Justified in Treating Contract Abandoned if It had Reasonable Cause to so Believe, Properly Refused, not Considering Justification for Such Belief.

7. In action on contract for applying gunite to concrete work, *held*, a requested instruction that, if defendant, had reasonable cause to believe that plaintiffs had abandoned work, then defendant was justified in treating contract as abandoned, properly refused, inasmuch as it did not take into consideration absence of conduct on part of plaintiffs causing such belief.

Trial — Charge, That Defendant's Removal of Equipment Did not Constitute Breach if It Could have Furnished Necessaries Within Reasonable Time, Properly Refused, Ignoring Element of Willingness to Do So.

8. In action for breach of contract, where plaintiffs contended defendant had rendered performance impossible by removal of its equipment, *held*, requested charge, that defendant's act in removing equipment did not constitute breach if it could furnish plaintiffs with necessary materials in a reasonable time, was properly refused as ignoring element of defendant's willingness to do so.

Contracts — Question for Jury Whether Plaintiffs had Abandoned Contract in View of Conflicting Evidence.

9. In action for breach of contract to apply gunite to concrete, where plaintiffs contended defendant's removal of air-compressor was primary cause of their failure to perform and defendant alleged plaintiffs' failure was due to negligence in not undertaking

---

5. Remedies of parties on anticipatory breach or prevention of performance of contract, see notes in 1 Ann. Cas. 427; 12 Ann. Cas. 1108; Ann. Cas. 1913C, 384; Ann. Cas. 1917E, 712; Ann. Cas. 1918C, 891. See, also, 6 R. C. L. 1024.

performance at earlier date, *held* that, in view of conflicting evidence, question of abandonment was for jury.

Appeal and Error, 4 **C. J.**, p. 1005, n. 68, p. 1010, n. 7.
Contracts, 13 **C. J.**, p. 615, n. 86, p. 653, n. 63, p. 654, n. 66, p. 655, n. 78, p. 661, n. 36, p. 664, n. 58, p. 683, n. 1, p. 790, n. 60.
Pleading, 31 **Cyc.**, p. 57, n. 32 New, 36.
Trial, 38 **Cyc.**, p. 1626, n. 69, p. 1632, n. 10, p. 1633, n. 12, p. 1657, n. 47, 53, p. 1707, n. 98.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is an action growing out of the alleged breach of a written contract reading as follows:

"Hauser Construction Company,
"Engineers—General Contractors.
"507 Henry Building,
"Portland, Oregon.
"Dec. 14th, 1921.
"Forrester, Lincoln & Stiger,
"618 Railway Exchange Bldg.,
"City.
"Gentlemen:
"We quote herewith your letter of December 12th, addressed to us:
" 'In compliance with your request to us to submit a unit price bid on the Gunite work for the headworks contract, we wish to submit the following proposal:
" 'We will place a single Gunite coat on the concrete work, not to exceed ¼ inch in thickness and of a 1:4 mixture, for the sum of 10¢ per square foot.
" 'It is further understood that the Hauser Construction Co. will deliver the sand and cement at a point convenient to the "Gun" on either side of the river at a price to us of $5.00 per bbl. for cement and $4.00 per yard for sand. And that the Hauser Con. Co. will furnish at least 150 ft. of air a minute at 60–lbs. pressure and at least 10 gallons of water per minute at 80–lbs. pressure at a point not to exceed 100 ft. from the "Gun," free of all charge to us.

" 'Hoping that this will meet with your approval, we remain,

" 'Yours respectfully,
" 'Forrester, Lincoln & Stiger,
" 'By L. R. Stiger.'

"We hereby accept your proposal as above. We will make payments to you for the above work on the same basis as payments are made to us under our contract with the city for the Bull Run Headworks, namely, 90 per cent of the amount earned is due and payable by the 15th of each succeeding month.

"We will advise you in a day or two as to the time for your starting the work at Bull Run.

"Yours truly,
"Hauser Construction Company,
"W. C. Taylor."

After setting out the contract, plaintiffs aver that after its execution on December 14, 1921, they promptly "entered upon the performance thereof * * and diligently continued to perform the same until the 18th day of January, 1922, at which time the defendant" breached the contract. Plaintiffs demand judgment against defendant for damages in the amount of $1,811.75.

The defendant denies that it breached the contract, and alleges:

"That after the plaintiffs began work, and on or about January 19, 1922, and on account of the severity of the freezing weather prevailing at said time, the plaintiffs abandoned further work and packed up their tools and outfit and gave directions to the defendant to transport such tools and outfit back to Portland."

Defendant further avers the performance of all agreements it had made with plaintiffs, and that it had never refused to permit plaintiffs to perform the work described in the contract. It also avers a coun-

terclaim in the sum of $324.88 for furnishing certain labor and material.

The trial resulted in a verdict for plaintiffs in the sum of $1,300.80. From judgment entered thereon, defendant appeals, asserting that the trial court committed error in the reception and in the exclusion of evidence offered, and in refusing certain instructions.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Marvin K. Holland, Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Holland.*

For respondents there was a brief and oral argument by *Mr. B. G. Skulason.*

BROWN, J.—The defendant Hauser Construction Company had entered into a contract with the City of Portland to construct the headworks of the Portland-Bull Run water system, situate in the mountains at a considerable elevation and about five miles north of the Portland Railway terminal on the Bull Run Line. In effecting the execution of that contract, the defendant made and entered into the contract with plaintiffs above set out, which forms the basis of this action.

Under their contract with defendant the plaintiffs undertook to gunite about 28,044 square feet of concrete. The term "gunite" originates from the fact that the coating placed upon the cement is projected thereon by a gun that casts cement, sand and water on to a surface by the use of compressed air. One of the engineers testified:

"The term 'gunite' is a coined word. It was invented possibly for the lack of something better to distinguish it from ordinary concrete."

A. C. Forrester, one of the plaintiffs, testified in his own behalf that they commenced work under the contract about two weeks previous to Wednesday, January 18, 1922, at which time the defendant Construction Company was completing the pouring of concrete in accordance with its contract with the City of Portland. As to undertaking the performance of the contract for the defendant, he testified:

"After we were on the site we prepared to dry sand and heat it and get the materials in place ready to operate. The next thing was to move the gun onto the far side of the river to cover the walls of the dam. * * The gun was moved over and we had the sand and cement transported * * and the pipeline laid to convey water, and the pipeline was laid to convey air 'to the gun, and we placed the gunite on the North side of the headworks. That was completed and we moved over to the South side. * * While we were on the South side, the temperature would fluctuate from about ten o'clock in the morning, from thirty on up to about forty, but we put the material on when the temperature raised above thirty-two. * * It was just at the beginning of the freeze, and the gunite, when we would shoot it on there, if it didn't turn to ice it would stick on, but if it did turn to ice it would not stick. * * We worked for several days on this South side under these conditions. * * The weather kept getting more severe and the frost penetrating deeper into the ground, and finally we had such a severe night the pipeline of the Hauser Construction Company froze up and we could not get any water and operate, and we waited for, I think it was, a day and it was thawed out and fixed up again. We worked another day or two, and finally it froze up completely and broke the pipe so that it could not be repaired. We were told to wait until the city had installed their pipeline which was of much larger area and a little more protected and it wasn't worth while to patch up this old line they had laid for their construction purposes, and we laid off until the city's line was

completed. * * I left one man out there to pick our stuff together, to gather it up and get it in shape and cover it up so it would not snow on it. It snowed several nights. There was a foot of snow on. * * We moved into town and left our equipment ready to operate, with a whole shedful of dry sand. * * It was all under cover. * * We left things there in first-class shape so we could continue the work when the weather moderated. We came back to town and in a few days I was called on the telephone by Mr. Rupert Hauser and told they were going to move their outfit in and wanted to know if we wanted ours in. I asked if they had settled with the city, completed their contract, and they said they had, the city was going to do the gunite work itself, * * and the city would come out there in the spring and finish it up. * * Then he asked me if I wanted the stuff moved in. I said, 'Inasmuch as you have closed your contract with the city and you have moved the air compressor in we won't have any air. I can't see anything but to move it in with your stuff.' So they loaded it on with their equipment and moved off the job and left us holding the sack with our job just half completed, and ready and willing to go back and complete the job.''

1. The allegations in the complaint averring promptness in the commencement and diligence in the performance of the contract constitute a mere averment of conclusions. The defendant was not prejudiced by the court's ruling in denying its offer of proof designed to refute such conclusions, especially in view of the fact that the defendant was permitted to show, and did show, the specific date on which the plaintiffs commenced to perform their contract and the extent of such performance. Moreover, the time when plaintiffs were to commence performance of their contract depended upon instructions from defendant. The writing in evidence specifically provides that the defendant shall designate to plaintiffs ''the time for your

starting the works at Bull Run." Furthermore, it is not shown, nor is it pretended, that plaintiffs did not commence performance in obedience to such notice.

2. Defendant complains because of the exclusion of certain testimony. We can see no injury one way or the other in the court's permitting or refusing to permit Taylor to testify concerning the comparative time required to put on plastering by hand and by "guniting," because that question was not within the issue for determination. The court did not commit reversible error in ruling upon the admissibility of the testimony.

3, 4. Defendant complains of the court's refusal to instruct the jury as requested in writing by it. By the first instruction refused the defendant requested the court to charge the jury that the plaintiffs had only a reasonable time, in view of all the circumstances and conditions, within which to perform the gunite work under their contract with the defendant construction company. This is a proper statement of the law; but coupled with it is a further statement that the court properly refused. As a part of the same instruction, the defendant asked the court to charge the jury that, if plaintiffs did not declare their intention and demand their right to complete the work, then, as a matter of law, plaintiffs abandoned the work and could not recover. This instruction was erroneous, in view of the testimony opposed thereto to the effect that the defendant repudiated the contract, refused to be bound by it, and declared that the City of Portland would do the gunite work.

5. In *Longfellow* v. *Huffman,* 49 Or. 486 (90 Pac. 907), this court held:

"A declaration by one party to a contract, made prior to the time fixed for performance, that he will

not comply with such contract, if not withdrawn, may dispense with or excuse an offer to perform by the other party before bringing his action: 1 Beach, Modern Law, Contracts, § 411; *Howard* v. *Daly,* 61 N. Y. 362 (19 Am. Rep. 285); *Bissell* v. *Balcom,* 39 N. Y. 275. * * 'It is well settled,' says the Supreme Court of Illinois, 'that, where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or, he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance sue and recover, under the contract; or, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. In the latter case the contract would be continued in force for that purpose. Where, however, the injured party elects to keep the contract in force for the purpose of recovering future profits, treating the contract as repudiated by the other party, in order for such recovery, the plaintiff must allege and prove performance upon his part, or a legal excuse for nonperformance.' *Lakeshore & M. S. Ry. Co.* v. *Richards,* 152 Ill. 80 (38 N. E. 777, 30 L. R. A. 33)."

This doctrine was followed in *Taylor* v. *Tripp,* 97 Or. 611 (191 Pac. 1054).

6. The next instruction refused by the court relates to the act of the defendant company in removing its equipment from the camp to Portland. This instruction omits intent as a material element actuating the defendant company in the removal of its equipment, and is not proper in the light of the Forrester testimony opposed thereto. The conflict in the evidence made a question of fact to be determined by the jury from the evidence and the surrounding circumstances.

7. The next instruction rests upon the proposition that, if the defendant company had reasonable cause to believe that plaintiffs had abandoned the gunite work, then the company was justified in treating the contract as at an end without taking into consideration the absence of any act or conduct upon the part of the plaintiffs causing such belief.

8. The defendant then requests the court to instruct the jury that its act in removing the equipment from the camp did not constitute a breach of the contract if it could, within a reasonable time, have furnished plaintiffs with air, water, sand and cement, as provided therein. The proposed instruction ignores the element of willingness on the part of the company to furnish the things specified. That the company could have furnished the air and the material, we have no doubt. But that is beside the issue. The question involved concerns the company's willingness, not its ability.

9. Did the plaintiffs by their act manifest an intention not to fulfill the substance of the contract entered into, or, was the failure to perform due to the action of the defendant in removing its air compressor as claimed by the plaintiffs? Such were the questions for determination at the trial of this case. The facts are disputed. Plaintiffs contend that defendant's removal of its air-compressor was the primary cause of their failure to perform, and defendant is equally certain that plaintiffs' failure was due to their inexcusable negligence in not undertaking the performance of their contract at an earlier date so as to avoid the freezing weather. So, as a matter of law, a conclusion cannot be pronounced one way or the other as defendant would imply in its instructions

requested and refused. The defendant was entitled to have its theory of the case presented to the jury with proper instructions, but such·instructions should not assume as true controverted facts. The question of abandonment was for the jury. It is only when the record discloses facts without conflict that the question is one of law.

The record disclosing no reversible error, this case is affirmed.                                    AFFIRMED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.