Argued February 8; modified March 21; rehearing denied
May 9, 1933

# IMPERIAL LAUNDRY CO. *v.* ALLEN

## (20 P. (2d) 217)

*M. M. Matthiessen,* of Portland (Wood, Montague & Matthiessen and John F. Reilly, all of Portland, on the brief) for appellant.

*Robert F. Maguire* and *David Robinson,* both of Portland (Winter & Maguire, of Portland, on the brief) for respondent.

CAMPBELL, J.  Plaintiff, a corporation, for some years immediately prior to September 27, 1928, engaged in the operation of a laundry in Portland, Oregon.  It claims to have built up a large and profitable business.  On that date, a fire occurred, destroying a large portion of the building, damaging some of the machinery and some of the customers' goods which were in the plant to be laundered.  Mr. Isaac Davis was its president and manager and owned and controlled all the stock of plaintiff.

In its complaint, it alleges that immediately after the fire many laundries in Portland tendered their services to take care of its business until such time as it could rebuild and re-establish itself.

Defendant Percy G. Allen is president and general manager and controls the stock of the Home Service Company, an Oregon corporation.  Plaintiff, through its president, claims that at the time of the fire defendant came to him and advised him to send all of its work to the Peerless laundry and also advised against rebuilding and re-establishing the business and finally offered to buy the Imperial laundry and its assets including its good will for $30,000 excepting, however,

any insurance that might be due on account of the fire. This proposition was thereupon accepted by plaintiff and it proceeded to turn over to defendant its chattels, including machinery and laundry supplies. Its account books and price lists and lists of its customers it turned over to the Peerless Laundry Company, a company in which defendant owned 50 per cent of the stock and of which he was a director. Plaintiff further alleges that after defendant had access to all the account books and customers' lists and price lists he repudiated the contract and refused to complete it or pay for the assets; that thereafter plaintiff sold such of said goods and chattels, as it still controlled, to the Peerless Laundry Company for $11,000 and brought this action for the damages it claims to have sustained by reason of defendants repudiation of its contract to wit, $19,-000, that being the difference between the price defendant agreed to pay and the price received.

Defendant entered a general denial. On these issues the case was submitted to a jury, resulting in a verdict and judgment in favor, of plaintiff for the full sum of $19,000. Defendant appeals.

Appellant timely moved for a non-suit and also for a directed verdict. Both motions were overruled, and the court's action thereon is assigned as error. We need pay no further attention to the motion for a non-suit, for the appellant, not willing to stand on it, put in testimony on his own behalf.

■ The question now arises on the motion for a directed verdict, and if there is any competent evidence on the matters in issue, whether such evidence came from plaintiff or defendant, to present a question of fact, there would not be error in overruling the motion.

■ The respondent's theory of the case is that its contract with appellant was an indivisible one and hav-

ing delivered a portion of the goods and chattels to appellant who accepted the same, the statute of frauds was no longer applicable. Oregon Code 1930, § 64-304.

Appellant contends that even if he had purchased the property and afterwards repudiated the sale the resale of the property by respondent amounted to an acceptance by it of the repudiation and constitutes a rescission of the contract. Appellant further contends that the sale by plaintiff to the Peerless Laundry Company of all its assets carried with it the claim sued on herein.

In his testimony defendant admits that he purchased and accepted the supplies that the Imperial laundry had on hand at the time of the fire.

It is true that, under the guidance of his counsel, defendant would say that when he said ''I'' he meant the Home Service Company.

''Q. You have spoken of 'I said', 'I did this' and 'I did that', which is not uncommon between officers of a corporation. Was this a transaction between you and Mr. Davis or between the Home Service Co. and the Imperial Laundry Co.?

''A. The Home Service Company and the Imperial Laundry Company''.

It is quite possible that when he was talking to Mr. Davis about buying the assets of the Imperial Laundry Company, including the supplies on hand, he was using the personal pronoun and that he did not have counsel present to prompt him as to advise Mr. Davis that ''I'' meant the Home Service Company.

Plaintiff's president, in his testimony, claims to have delivered to defendant, under his alleged contract of sale, all of the assets of plaintiff in the shape of laundry machinery and equipment except the delivery automobiles used in the business. That the account books, route books, customers' lists and price

lists were given into the possession of the Peerless Laundry Company in which appellant was a director and owned or controlled 50 per cent of the stock.

Appellant testified that no machinery or equipment was delivered to him under any contract of sale; that he simply permitted respondent to store certain of its machinery in some buildings belonging to appellant.

The Home Service Company, of which defendant is president and general manager, owns or controls stock in many laundry companies in Portland among which are the Troy laundry, the Crystal laundry, the Union Yale laundry, the New Way National laundry, the Palace laundry, the Allen Cleaning and Dyeing Works, the Opera House laundry, and the Peerless laundry as well as some out of town laundries.

We do not think that the parts of the Uniform Sales Act, cited by appellant, affects the transaction under consideration. In *Roehm v. Horst,* 178 U. S. 1 (20 S. Ct. 780, 44 L. Ed. 953), the court quoted with approval from an opinion in the case of *Hochster v. De La Tour,* 2 El. & Bl. 678:

"But it is surely much more rational, and more for the benefit of both parties, that, after the renunciation of the agreement by the defendant, the plaintiff should be at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damage he has suffered from the breach of it. * * * It seems strange that the defendant, after renouncing the contract, and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion, and that an opportunity is not left to him of changing his mind".

In the same case, the court quoted with approval from *Frost v. Knight,* L. R. 7 Ex. 111:

"On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a

wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen on the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss''.

Appellant's brief is on the theory that respondent is suing on a completed sale, an executed contract; but neither the pleadings nor plaintiff's evidence support that contention. If plaintiff's evidence be true, the sale at best was only partially executed by a delivery and acceptance of a part of the goods covered by an indivisible contract of sale. The control of the undelivered goods did not pass. Therefore, the plaintiff not only had a right but a duty to mitigate the damages by a resale of the goods, using reasonable efforts to obtain the best price possible. *Roehm v. Horst,* supra; *Krebs v. Livesley,* 59 Or. 574 (114 P. 944, 118 P. 165, Ann. Cas. 1913C, 758); Oregon Code 1930, § 64-609, (5).

■ Appellant further contends that before respondent could avail itself of the benefits of a resale, without rescission of the contract, it must have notified the buyer. The Uniform Sales Act does not so require.

"(3) It is not essential to the validity of a re-sale that notice of an intention to re-sell the goods be given by the seller to the original buyer. But where the right to re-sell is not based on the perishable nature of the goods or upon an express provision of the contract or the sale, the giving or failure to give such notice shall be relevant in any issue involving the question whether the buyer had been in default an unreasonable length of time before the re-sale was made''.

"(5) The seller is bound to exercise reasonable care and judgment in making a re-sale, and subject to

this requirement may make a re-sale either by public or private sale''. Oregon Code 1930, § 64-609.

The goods covered by the contract of sale under consideration may well be considered in the same category as goods stopped *in transitu.* There is no question of the buyer being in default an unreasonable length of time. Where the buyer unequivocally repudiates the contract, giving him notice would be a vain and futile gesture. Why should he complain because the seller believed him, or that the seller did not give him a second opportunity to change his mind? *Shucking v. Young,* 78 Or. 483 (153 P. 803); *Taylor v. Tripp,* 97 Or. 611 (191 P. 1054); *Livesley v. Strauss,* 104 Or. 356 (206 P. 850, 207 P. 1095); *Forrester v. Hauser,* 116 Or. 222 (240 P. 873).

■ If this were an executed contract, and all the goods and chattels, including choses in action, had been delivered and accepted, then defendant's position would be tenable. But that is not the case under the pleadings or testimony. Respondent's president, through whom the transaction was made, and who gave most of respondent's testimony in the case, does not appear to have a command, or a good understanding of the English language. Although the record does not disclose the place of his birth, he is evidently foreign-born and did not speak English in his youth. His first name furnishes a better clue to his identification than his surname. It is doubtful if he really understands what a legal delivery and acceptance means. He did not testify that the transportation equipment or the account books had been delivered to appellant. Appellant testified that there was no acceptance under a sale of any of the goods and chattels except the sup-

plies on hand and that the supplies were not accepted by him, but by the Home Service Company. It left the matter one for the jury to pass upon.

■ Appellants next contention is that the claim sued upon herein, if there be such a claim, passed to the Peerless laundry by virtue of plaintiff's contract of sale, the sale being by the Imperial Laundry Company to the Peerless laundry of, "all the business, machinery, equipment, office furniture, supplies, books of account, customers' lists, bills and accounts receivable, delivery equipment, including automobiles, and other personal property used in connection with, and the good will of the business of Imperial Laundry Company". In no place in this list does it enumerate the claim herein sued upon and no attempt was made to sell the claim; but, even should it be considered that the above enumeration was sufficient to carry the claim with it, that fact does not appear on the face of the complaint. Consequently it would be waived unless taken advantage of by answer. *Hillman v. Young*, 64 Or. 73 (127 P. 793, 129 P. 124); *Triphonoff v. Sweeney*, 65 Or. 299 (130 P. 979).

Appellant contends that the verdict is erroneous because it does not conform to the evidence.

■ In this we agree with appellant. The evidence clearly shows that respondent sold to the Peerless laundry "all of the business, machinery, equipment, office furniture, supplies, books of account, customers' lists, bills and accounts receivable, delivery equipment, including automobiles and other personal property used in connection with, and the good will of the business of Imperial Laundry Company", for the sum of $16,000. It is true plaintiff's testimony would seem to indicate that the Peerless laundry was not ener-

getic in collecting the bills receivable turned over to it, and there was not the amount realized that plaintiff thought there should have been. It also intimates that the Peerless laundry deducted from the purchase price some accounts payable which were not yet due, but these are not losses that it could charge up to appellant. The fact remains clear and unequivocal that it sold its assets to the Peerless Laundry Company for $16,000, and received that amount, either in cash or credits, including settlement for the supplies turned over to appellant.

■ The jury having found, under the complaint and competent testimony, that the contract alleged in respondent's complaint was entered into between respondent and appellant, that part of their verdict we are not at liberty to disturb. But having found in a sum $5,000 greater than there was any competent evidence to support, we will set aside the judgment and enter one in favor of respondent for $14,000. Neither party is to recover costs in this court.

It is so ordered.

RAND, C. J., BEAN and BAILEY, JJ., concur.